**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**THE SAMUEL LAW FIRM**
Michael Samuel (MS 7997)
1441 Broadway, Suite 6085
New York, New York 10018
(212) 563-9884
michael@thesamuellawfirm.com
*Attorneys for Plaintiff*

Rachel Teichman,

*Plaintiff,*

v.

Supreme Robot Pictures, LLC,
Victor Varnado, and Ryan Mead,

*Defendants.*

Docket No. 1:26-cv-07349

CIVIL ACTION

COMPLAINT

Plaintiff Rachel Teichman, by and through her undersigned attorneys, for her complaint against defendants Supreme Robot Pictures, LLC, Victor Varnado, and Ryan Mead (hereinafter collectively referred to as "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Rachel Teichman, a former employee of Defendants, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), alleges that she is entitled to recover from Defendants, jointly and severally: (i) unpaid minimum wages for each workweek in which Defendants paid her nothing, or paid her less than the federal minimum wage for all hours worked, on her regular payday, as required by 29 U.S.C. § 206; and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because Defendants' violations

were willful and lacked a good faith basis.

2. Plaintiff further complains that she is entitled to recover from Defendants: (i) back wages for unpaid minimum wage, which Defendants willfully failed to pay as required by the New York Labor Law §§ 650 et seq. ("NYLL") and the supporting New York State Department of Labor regulations; (ii) her unpaid agreed-upon weekly salary, which Defendants willfully failed to pay as required by NYLL Article 6, §§ 190 et seq.; (iii) liquidated damages pursuant to the NYLL for these violations; (iv) statutory damages for Defendants' violations of the Wage Theft Prevention Act, each of which violations caused Plaintiff concrete financial harm; and (v) damages for Defendant Supreme Robot Pictures, LLC's breach of Plaintiff's written Letter of Employment.

**PARTIES**

3. Plaintiff Rachel Teichman (hereinafter referred to as "Plaintiff Teichman" or "Plaintiff") is an adult individual residing in Queens County, New York.

4. At all times relevant herein, defendant Supreme Robot Pictures, LLC (hereinafter referred to as "Supreme Robot" or the "Company") has been a domestic limited liability company organized and existing under the laws of the State of New York (N.Y. Department of State ID No. 3446260), with its principal place of business in Ridgewood, Queens, NY and a registered agent, Business Filings Incorporated, at 187 Wolf Road, Suite 101, Albany, New York 12205.

5. At all times relevant herein, Supreme Robot has been

engaged in the business of developing and producing film, video, and other media content.

6. Defendant Victor Varnado (hereinafter referred to as "Defendant Varnado") is an adult individual who, upon information and belief, resides in New York, and is the Chief Executive Officer and an owner, member, and principal of Supreme Robot.

7. Defendant Varnado signed Plaintiff's Letter of Employment on behalf of Supreme Robot, and at all relevant times had the power to hire and fire employees, set their wages and work schedules, direct their work, determine when and whether they would be paid, and maintain their employment records, including those of Plaintiff.

8. Defendant Ryan Mead (hereinafter referred to as "Defendant Mead") is an adult individual who, upon information and belief, resides in New York, and is the Chief Financial Officer and, upon information and belief, an owner, member, and principal of Supreme Robot.

9. Defendant Mead signed Plaintiff's Letter of Employment on behalf of Supreme Robot, and at all relevant times controlled the Company's finances and payments to employees, including the amount and timing of payments made to Plaintiff, and maintained the Company's financial and pay records, including those of Plaintiff.

10. At all times relevant herein, Defendants Varnado and Mead have been involved in the day-to-day operations of Supreme Robot and played an active role in managing the business, supervising and directing Plaintiff's work, and deciding when, whether, and how much

to pay Plaintiff during her employment. Defendants Varnado and Mead personally communicated with Plaintiff about the status of her pay and the amounts owed to her, as set forth below.

11. At all relevant times herein, Defendants each constituted an "employer" of Plaintiff as that term is defined in the FLSA, 29 U.S.C. § 203(d), and the New York Labor Law, §§ 2, 190(3), and 651(6).

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as her FLSA claim.

13. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Supreme Robot resides in this district, and a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, including Plaintiff's performance of her work for Defendants from Queens County.

## FLSA COVERAGE

### *Enterprise Coverage*

15. At all times relevant herein, Supreme Robot has been an "enterprise engaged in commerce or in the production of goods for

commerce" within the meaning of the FLSA, 29 U.S.C. §§ 203(r) and 203(s)(1)(A).

16. At all times relevant herein, Supreme Robot has had two or more employees, including Plaintiff, who were engaged in commerce, and who handled, sold, or otherwise worked on goods or materials that had been moved in or produced for interstate commerce, including computers, laptops, mobile telephones, cameras, lighting, audio, and editing equipment, software, and office supplies, which upon information and belief were manufactured outside the State of New York.

17. Upon information and belief, at all times relevant herein, Supreme Robot's officers and employees regularly communicated and transacted business by telephone, email, and the internet with persons and entities located outside the State of New York, including performers, crew members, vendors, collaborators, distributors, and online platforms, and Supreme Robot developed, produced, promoted, and distributed its content through channels of interstate commerce, including internet platforms operated by companies headquartered outside New York, such as Meta Platforms, Inc., which is headquartered in Menlo Park, California

18. Upon information and belief, at all times relevant herein, Supreme Robot has maintained bank accounts with, and made payments to its workers, including Plaintiff, through interstate banking and payment networks, including Bank of America and the Zelle payment network.

19. Upon information and belief, at all times relevant herein, and in each of the years 2021 through 2026, Supreme Robot has had an annual gross volume of sales made or business done of not less than $500,000.00, exclusive of excise taxes at the retail level that are separately stated.

***Individual Coverage***

20. Independently of enterprise coverage, at all times relevant herein, Plaintiff was individually "engaged in commerce" within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a), because she regularly and recurrently used the instrumentalities of interstate commerce in the performance of her job duties. See 29 C.F.R. §§ 776.10, 776.11.

21. As a regular and recurring part of her duties as Assistant Producer, Plaintiff used the telephone to place and receive calls and messages with persons located outside the State of New York, including [performers, crew members, vendors, producers, collaborators, and clients] located in, among other places, [NEW JERSEY,TEXAS]. Plaintiff made and received such interstate communications (Internet voice/video/email/Direct Message) on a routine basis throughout her employment; these communications were not isolated or sporadic but were a regular part of her work.

22. As a further regular and recurring part of her duties, Plaintiff used the internet to access, and to create, post, and manage content on, websites and platforms operated by companies located outside the State of New York, including Facebook and

Instagram, which are operated by Meta Platforms, Inc. from Menlo Park, California, and other out-of-state platforms including TikTok, X (formerly Twitter) from San Francisco, California and YouTube from San Bruno, California, in furtherance of Supreme Robot's business, including by promoting Supreme Robot's productions, communicating with collaborators and audiences, and managing the Company's pages and accounts.

23. Plaintiff also regularly sent and received email in the course of her work, through her Company email account, rachelt@supremerobot.com, to and from persons located outside the State of New York.

24. Plaintiff's regular use of interstate telephone lines, email, and the internet to communicate with persons in other states and to access and use out-of-state websites was directly and vitally related to the functioning of Supreme Robot's interstate business, and constituted engagement in commerce within the meaning of the FLSA.

## FACTS

25. Plaintiff was hired by Defendants as an Assistant Producer pursuant to a written Letter of Employment dated June 28, 2021 (the "Letter of Employment"), which was signed on behalf of Supreme Robot by Defendant Varnado, as Chief Executive Officer, and Defendant Mead, as Chief Financial Officer.

26. The Letter of Employment designated Plaintiff's position as a full-time position; provided that Plaintiff would be paid a

weekly salary of $900.00, payable every week; required Plaintiff to work under the general supervision of, and pursuant to the orders, advice, and direction of, the Company; and required Plaintiff to work additional hours as deemed necessary by the Company.

27. Plaintiff was employed by Defendants as an Assistant Producer from on or about July 5, 2021, through on or about April 15, 2026.

28. Plaintiff’s duties included coordinating production schedules and logistics, communicating with performers, crew, and vendors, managing the Company’s social media accounts, and providing administrative support to production.

29. Plaintiff’s work was performed in the normal course of Defendants’ business, was integrated into the business of Defendants, and was performed under the direction and control of Defendants Varnado and Mead. Plaintiff did not supervise other employees, did not have authority to hire or fire, did not exercise discretion and independent judgment with respect to matters of significance to the Company, and her primary duty did not consist of work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

30. Except as set forth in paragraph 29, throughout her employment, Plaintiff worked a full-time schedule of approximately 35 hours per week, typically Monday-Friday from 10:00 a.m. to 05:00 p.m., and worked additional hours as directed by Defendants.

31. Beginning in or about August 2025 and continuing for

approximately two months, Plaintiff and Defendants agreed that Plaintiff would work a reduced schedule at a weekly rate of $300.00. That reduced rate applied only to that period, after which Plaintiff's weekly salary of $900.00 resumed.

32. Although Defendants controlled Plaintiff's work as her employer, Defendants never placed Plaintiff on payroll. Defendants instead paid Plaintiff through personal electronic transfers via Zelle, never withheld taxes or other statutory deductions from her pay, and never reported her as an employee. As a direct result, Plaintiff was unable to apply for New York State disability benefits when she needed them, notwithstanding that such benefits would have been available to a properly classified and reported employee.

33. Beginning in or about July 2021, Defendants began failing to pay Plaintiff her weekly salary on her regular weekly payday, and thereafter fell increasingly behind on paying her wages.

34. For extended stretches of Plaintiff's employment, Defendants paid Plaintiff nothing at all on her regular payday for the work she performed that week. In other weeks, Defendants paid Plaintiff only a portion of her weekly salary. Defendants made sporadic lump-sum payments toward the growing arrears, but those payments never brought Plaintiff current.

35. In each workweek in which Defendants paid Plaintiff nothing, or paid her less than the applicable minimum wage for all hours she worked that week, on her regular payday, Defendants failed to pay Plaintiff the federal minimum wage of $7.25 per hour and the

New York minimum wage applicable in New York City, which was $15.00 per hour in 2021 through 2023, $16.00 per hour in 2024, $16.50 per hour in 2025, and $17.00 per hour in 2026.

36. Defendants repeatedly acknowledged in writing that they owed Plaintiff substantial unpaid wages. On November 7, 2024, Defendant Mead sent Plaintiff a text message stating that, counting only from January 2023 forward, the Company's own figure for wages owed to her was $49,200, and that additional back pay for the period before 2023 remained to be calculated from the Company's older Bank of America bank records.

37. On or about May 22, 2026, Defendant Varnado sent Plaintiff a text message stating that Defendants believed the money owed to her was $42,900.00, and asking whether that figure matched Plaintiff's records.

38. On July 7, 2026, Plaintiff sent Defendant Mead text messages setting out that her back pay figures were greater than his. Defendant Mead read those messages and did not dispute them.

39. Based on Plaintiff's full compensation history, Defendants owe Plaintiff not less than approximately $120,000 in unpaid wages, an amount materially higher than either partial figure offered by Defendants Mead and Varnado.

40. Apart from the temporary reduced-schedule arrangement described in paragraph 29, Defendants never agreed to modify Plaintiff's full-time position or her weekly salary of $900.00. When Plaintiff later sought to discuss a longer-term part-time

arrangement, Defendants did not meet with her to negotiate one, despite her repeated follow-up. During this period, upon information and belief, other employees of Supreme Robot continued to receive their full salaries while Plaintiff did not.

41. On or about April 15, 2026, Defendants informed Plaintiff that her services were no longer needed. Defendants never provided Plaintiff with written notice of the termination of her employment, and failed to pay Plaintiff all wages owed to her by the regular payday for the pay period in which her employment ended, as required by NYLL § 191(3).

42. Plaintiff has received no paystubs or wage statements of any sort with her pay during her employment by Defendants, which has caused her concrete financial harm. Without wage statements, Plaintiff could not determine the amounts she had been paid and was owed in any given week, could not verify that taxes and statutory contributions were being withheld and remitted on her behalf, and lacked the documentation she needed to establish her employment and earnings when applying for disability benefits. Defendants' failure also allowed Defendants to fall further and further behind on Plaintiff's wages without any accurate contemporaneous record of what was owed.

43. Defendants also failed to provide Plaintiff with a written notice providing the information required by the Wage Theft Prevention Act—including, inter alia, the Defendants' contact information, Plaintiff's rate of pay and the basis thereof, and her

regular payday—and failed to obtain Plaintiff's signature acknowledging the same, upon Plaintiff's hiring or at any time thereafter, in violation of the Wage Theft Prevention Act, causing her financial harm resulting from her not being informed of her status as an employee, her regular payday, and her right to be paid in full on that day.

44. Defendants' failure to pay Plaintiff her wages was willful and lacked a good faith basis, because Defendants set Plaintiff's compensation, controlled whether and when she was paid, knew that they were not paying her, and repeatedly acknowledged in writing that substantial wages were due and owing to her, yet continued to withhold them.

45. Upon information and belief, while Defendants employed Plaintiff, and throughout all relevant time periods, Defendants failed to post or keep posted a notice explaining the minimum wage rights provided by the FLSA or New York Labor Law.

46. As a direct and foreseeable result of Defendants' nonpayment, Plaintiff was forced to take out a personal loan in or about April 2026 to cover debt she accrued while Defendants withheld her wages and has incurred interest on that loan.

47. Plaintiff served written notice on Defendant Varnado, within one hundred eighty days after the termination of her employment, of her intention to hold him personally liable for the wages owed to her pursuant to New York Limited Liability Company Law § 609(c). Plaintiff expressly reserves all rights under that statute

against Defendant Varnado and any other member of Supreme Robot within its scope.

**COUNT I**

**(Fair Labor Standards Act – Minimum Wage)**

48. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

49. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA, and Plaintiff was covered by the FLSA both because Supreme Robot was an enterprise engaged in commerce and because Plaintiff was individually engaged in commerce.

50. Plaintiff was not exempt from the minimum wage requirements of the FLSA. Among other things, Defendants did not pay Plaintiff on a salary basis, because they failed to pay her a predetermined amount of compensation each workweek, see 29 C.F.R. § 541.602, and Plaintiff's primary duties did not qualify for any exemption.

51. Defendants willfully failed to pay Plaintiff at least the federal minimum wage for all hours worked, on her regular payday, in each workweek in which Defendants paid her nothing or less than the minimum wage, in violation of the FLSA, 29 U.S.C. §§ 206(a) and 215(a)(2).

52. The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and lacked a good faith basis within the meaning of 29 U.S.C. § 260,

because Defendants set Plaintiff's compensation, controlled whether and when she was paid, and knew and acknowledged in writing that they were not paying her.

53. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid minimum wages, an equal amount as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**(New York Labor Law – Minimum Wage)**

54. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

55. At all relevant times, Plaintiff has been employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

56. Plaintiff was not exempt from the minimum wage requirements of the New York Labor Law. Among other things, Plaintiff's weekly salary of $900.00 was below the minimum salary required for the executive and administrative exemptions in New York City at all relevant times, see 12 N.Y.C.R.R. § 142-2.14, and Defendants did not in fact pay Plaintiff on a salary basis.

57. Defendants willfully violated Plaintiff's rights by failing to pay her the lawfully required hourly rate at least equal to the applicable New York minimum wage for all hours worked, in

violation of the New York Labor Law §§ 652 and 663, and its supporting regulations, including the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142.

58. Defendants' failure to pay Plaintiff the lawfully required minimum hourly rate was willful, and lacked a good faith basis, within the meaning of New York Labor Law §§ 198 and 663 and supporting regulations, because Defendants set Plaintiff's compensation and were aware that they were not compensating Plaintiff at the applicable statutory minimum wage during her employment by Defendants.

59. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid minimum wage compensation, liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law §§ 198 and 663(1).

**COUNT III**
**(New York Labor Law – Unpaid Wages)**

60. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

61. At all relevant times, Plaintiff was an "employee" and each Defendant was an "employer" within the meaning of New York Labor Law § 190, and the weekly salary of $900.00, except during the period described in paragraph 29, when the agreed weekly rate was

$300.00, that Defendants agreed to pay Plaintiff constituted "wages" within the meaning of New York Labor Law § 190(1).

62. Defendants willfully violated Plaintiff's rights by failing to pay her the full wages she earned, in accordance with the agreed terms of her employment, on her regular paydays and upon the termination of her employment, and by withholding those wages, in violation of New York Labor Law §§ 191 and 193.

63. Defendants' failure to pay Plaintiff her wages was willful and lacked a good faith basis within the meaning of New York Labor Law § 198, because Defendants knew and repeatedly acknowledged in writing that those wages were due and owing.

64. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, liquidated damages equal to one hundred percent of the unpaid wages, prejudgment interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198(1-a).

## COUNT IV
## (New York Labor Law – Wage Theft Prevention Act)

65. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

66. At all relevant times herein, Plaintiff has been employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

67. Defendants willfully violated Plaintiff's rights by failing to provide her with the wage notice required by New York Labor Law § 195(1) when she was hired, or at any time thereafter, causing financial harm to Plaintiff as set forth above.

68. Defendants willfully violated Plaintiff's rights by failing to provide her with wage statements with each payment of wages, as required by New York Labor Law § 195(3), at any time during her employment, causing financial harm to Plaintiff as set forth above.

69. Due to Defendants' New York Labor Law violations relating to the failure to provide Plaintiff with wage statements, and the resulting financial harm caused, Plaintiff is entitled to recover from Defendants statutory damages of $250 per day for each workday that the violations occurred, up to $5,000, pursuant to New York Labor Law § 198(1-d).

70. Due to Defendants' New York Labor Law violations relating to the failure to provide a wage notice, and the resulting financial harm caused, Plaintiff is entitled to recover from Defendants statutory damages of $50 per day for each workday that the violations occurred, up to $5,000, pursuant to New York Labor Law § 198(1-b).

**COUNT V**

**(Breach of Contract – Against Supreme Robot)**

71. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

72. The Letter of Employment is a valid and binding contract between Plaintiff and Supreme Robot, supported by adequate consideration.

73. Plaintiff performed all of her obligations under the Letter of Employment.

74. Supreme Robot breached the Letter of Employment by failing to pay Plaintiff her weekly salary of $900.00 every week, except during the period described in paragraph 29, when the agreed weekly rate was $300.00, as the Letter of Employment required.

75. As a direct and proximate result of Supreme Robot's breach, Plaintiff has been damaged in an amount to be determined at trial, but not less than her unpaid salary, together with the foreseeable consequential damages she incurred as a result of the nonpayment, including interest on the personal loan she was forced to take out, plus prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004.

76. This Count is pleaded in addition to, and in the alternative to, Plaintiff's claims under the New York Labor Law, to the extent any amounts owed to Plaintiff under the Letter of Employment are not recoverable thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New

York Labor Law;

B. A compensatory award of unpaid minimum wage compensation, at the applicable statutory rates, due under the FLSA and the New York Labor Law;

C. A compensatory award of all unpaid wages due under the New York Labor Law, including Plaintiff's unpaid weekly salary;

D. An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage compensation pursuant to 29 U.S.C. § 216(b);

E. An award of liquidated damages for Defendants' New York Labor Law violations pursuant to New York Labor Law §§ 198(1-a) and 663(1);

F. An award of statutory damages for Defendants' violations of the New York Wage Theft Prevention Act pursuant to New York Labor Law §§ 198(1-b) and 198(1-d);

G. An award of damages against Supreme Robot for breach of the Letter of Employment, including consequential damages;

H. A judgment holding Defendants jointly and severally liable for all of the foregoing, except as to Count V;

I. An award of prejudgment interest, including pursuant to N.Y. C.P.L.R. §§ 5001 and 5004, and post-judgment interest pursuant to 28 U.S.C. § 1961;

J. An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and New York Labor Law §§ 198 and 663; and

K. Such other, further, and different relief as this Court deems just and proper.

Dated: November 13, 2026
New York, New York

By: *<u>/s/ Michael Samuel</u>*
Michael Samuel, Esq. (MS 7997)
THE SAMUEL LAW FIRM
1441 Broadway
Suite 6085
New York, New York 10018
(212) 563-9884
*Attorneys for Plaintiff*